IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENISE D. RAMIREZ,

        Plaintiff,

     v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.

Civ. No. 1:15-cv-00070-AA

OPINION AND ORDER

---

Tim Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137
      Attorney for plaintiff

Billy J. Williams
Acting United States Attorney
District of Oregon
Janice E. Hébert
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

1 – OPINION AND ORDER

Heather L. Griffith
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
        Attorneys for defendant

AIKEN, Judge:

Denise D. Ramirez (plaintiff) brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (Commissioner). The Commissioner denied plaintiff's application for Social Security Income (SSI) benefits and Disability Insurance Benefits (DIB) under the Act. The Commissioner's decision is affirmed and the case is dismissed.

## PROCEDURAL BACKGROUND

On January 22, 2010, plaintiff protectively filed a Title II application for DIB, and on February 12, 2010, plaintiff filed a Title XVI application for SSI. Tr. 19. Both applications alleged disability beginning on September 7, 2007. Tr. 19. Her applications were initially denied on June 30, 2010, and upon reconsideration on October 4, 2010. Tr. 19. Plaintiff requested a hearing on November 15, 2010, and three separate video hearings before an Administrative Law Judge (ALJ) were held on February 23, 2012, June 28, 2012, and January 17, 2013. Tr. 19, 44-137. At the hearings, plaintiff, plaintiff's caregiver, vocational experts, and a medical expert testified. Tr. 44-137.

On March 21, 2013, the ALJ issued a decision finding plaintiff not disabled under the Act. Tr. 19-34. On November 24, 2014, the Appeals Council denied review, rendering the ALJ's decision final. Tr. 1-3. Plaintiff now seeks judicial review.

Plaintiff was forty-three years old at the time of the February 23, 2012 hearing before the

ALJ. Tr. 115. She has a high school GED and vocational training as a phlebotomy technician. Tr. 32, 115. She previously worked as construction worker, a certified nursing assistant, and a claims clerk. Tr. 32, 565-66, 575, 671-74. Plaintiff alleges disability as of December 18, 2009, due to degenerative disc disease and spondylosis of the cervical spine, degenerative changes of the lumbosacral spine, cognitive disorder, mood disorder, asthma, conversion disorder, and borderline intellectual functioning. Tr. 20, 22, 218-32, Pl.'s Br. 2.

Prior to the current application, plaintiff filed applications for DIB and SSI, which were denied in a decision on December 18, 2009 before a different ALJ. Tr. 20. Plaintiff requested review of this decision by the Appeals Council, which denied review. Tr. 20. Plaintiff did not initiate a claim for civil action in Federal district court. Tr. 20. In the current decision, this ALJ noted that he did not "reopen the unfavorable decision," and that any reference to the prior application was for "clarification and credibility purposes only." Tr. 20. The ALJ found that although plaintiff alleges disability beginning on September 7, 2007, he considered the "unfavorable decision of the prior Administrative Law Judge to be *res judicata* for the period from the currently alleged onset date through the date of the prior decision, December 18, 2009." Tr. 20. Based on this determination, the ALJ considered plaintiff's disability beginning December 19, 2009, the day after the date of the prior final and binding unfavorable decision. Tr. 20.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The Commissioner's findings are upheld if supported by inferences reasonably drawn from the record; if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The ALJ evaluated plaintiff's allegation of disability pursuant to the relevant five-step sequential process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 19, 2009. Tr. 22, 513-22, 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the ALJ found that plaintiff had severe impairments of degenerative disc disease and spondylosis of the cervical spine, degenerative changes of the lumbosacral spine, a cognitive disorder, a mood disorder, asthma, a conversion disorder, and borderline intellectual functioning. Tr. 22, 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ noted that he adopted the

findings from the prior unfavorable decision regarding plaintiff's severe medically determinable impairments, and included additional impairments from "more recent evidence." Tr. 22. The ALJ found that plaintiff failed to show a traumatic brain injury, post-concussion syndrome, seizure disorder, or posttraumatic stress disorder (PTSD) as severe impairments. Tr. 23-24. The ALJ also found no lumbosacral radiculopathy, plexopathy, or neuropathy. Tr. 24.

At step three, the ALJ found that plaintiff's medically severe impairments did not meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude gainful activity. Tr. 24-26, 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. Because plaintiff was not presumptively disabled at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work by assessing her residual functional capacity (RFC). Tr. 26-32.

At step four, the ALJ found that plaintiff had the RFC to "perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)" with the following exceptions:

> She is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours, sit for six hours, and perform no more than occasional stooping. She is able to do simple, repetitive tasks, can have no contact with the public, and can have no more than occasional contact with co-workers and supervisors. Tr. 26.

Based on plaintiff's assessed RFC and the testimony of the VE, the ALJ found that plaintiff could not perform any of her past relevant work as a construction worker, a certified nursing assistant, or a claims clerk. Tr. 32, 20 C.F.R. §§ 404.1565, 416.965.

If the plaintiff is unable to perform any past relevant work, the inquiry proceeds to step five, where the Commissioner bears the burden to establish that the plaintiff is capable of performing other work that exists in significant numbers in the national economy. *Yuckert*, 482 U.S. at 141-42, 20 C.F.R. §§ 404.1520(f), 416.920(f). Relying on the testimony of the VE, the

ALJ found that plaintiff was able to perform other work as a laundry worker, cleaner, housekeeper, and small products assembler. Tr. 32-33. Therefore, the ALJ found that plaintiff was not disabled within the meaning of the Act. Tr. 33.

## DISCUSSION

Plaintiff asserts that she should be found disabled as of December 18, 2009, the Commissioner's decision reversed, and the case remanded for immediate payment of benefits. Pl.'s Br. 2, 29. Alternatively, the plaintiff seeks remand for further proceedings, with instructions. Pl.'s Br. 29. Plaintiff argues the ALJ erred by: (1) failing to find that plaintiff's mental impairments meet or equal listing 12.02; (2) failing to give clear and convincing reasons to reject plaintiff's testimony; (3) improperly rejecting the opinions of plaintiff's treating and examining physicians; (4) improperly assessing plaintiff's limitations regarding concentration, persistence, and pace; (5) improperly disregarding lay witness testimony; and (6) failing to accurately account for plaintiff's limitations in the step five analysis. Pl.'s Br. 15-29.

### A. Plaintiff's Mental Impairments Meet or Equal Listing 12.02

Plaintiff argues that the ALJ failed to provide substantial evidence to show that her mental impairments do not meet or equal listing 12.02. Pl.'s Br. 15. Specifically, plaintiff focuses on the paragraph B criteria, and argues that: 1) the ALJ's findings are contradicted by the opinions and objective medical evidence of Dr. Betty Borden and Dr. Grant Rawlins; and 2) even if the ALJ properly found plaintiff did not meet listing 12.02, he failed to properly determine that plaintiff's impairments do not equal listing 12.02. Pl.'s Br. 15-18.

The listings, 20 C.F.R. Pt. 404, Subpt. P, App. I., describe specific impairments of each major body system, which are "considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525(a), 416.925(a). If a claimant's impairment matches a

listed impairment, "she is judged to be disabled without the need to conduct any further analysis." *Celaya v. Halter,* 332 F.3d 1177, 1181 (9th Cir. 2003). "In order to meet a listed impairment in Appendix 1 for a mental disorder, a claimant must satisfy criteria in paragraph A, which medically substantiate the presence of a mental disorder, and the criteria in paragraphs B or C, which describe the functional limitations associated with the disorder which are incompatible with the ability to work. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A," *Holohan v. Massanari,* 246 F.3d 1195, 1203-04 (9th Cir. 2001). In order to satisfy listing 12.02 paragraph B criteria, plaintiff must have an organic mental disorder which results in at least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;
> 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Here, the ALJ found that the plaintiff had not satisfied the paragraph B criteria. Tr. 25. The ALJ noted that plaintiff had moderate to marked restrictions in activities of daily living, mild difficulties in social functioning, moderate to marked limitations in concentration, persistence, or pace, and no episodes of decompensation based on Dr. Borden's, Dr. Rawlin's, and the state agency psychological consultants' reports and testimony. Tr. 25. The ALJ opined, "Because the [plaintiff]'s mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration," plaintiff has not met the requirements for listing 12.02 Tr. 25.

In making this finding, I find the ALJ provided substantial evidence. First, the ALJ considered the assessment of Dr. Borden, through both a written medical interrogatory and live testimony at the January 17, 2013 hearing. Tr. 25, 49-61, 1081-90. The ALJ noted that Dr.

Borden found plaintiff had some moderate to marked restrictions and difficulties, but that Dr. Borden's opinion did not support the finding that plaintiff "has any impairment or combination of impairments of listing-level severity." Tr. 25. Plaintiff argues that the ALJ's finding she has moderate to marked limitations in activities of daily living and in concentration, persistence, or pace, means that "she is markedly limited part of the time." Pl.'s Br. 16. By being markedly limited "part of the time," plaintiff argues she will not be able to work on a "sustained" basis, and therefore should be found disabled. Pl.'s Br. 16.

I find plaintiff's argument is misplaced, particularly given Dr. Borden's medical interrogatory and the January 17, 2013 testimony cited by the ALJ in his findings. Tr. 25, 48-61 1082. Dr. Borden wrote in her medical interrogatory, "I considered 12.02, 12.04, + 12.07 but I don't believe that the severity of symptoms would satisfy the B criteria." Tr. 1083. Further, at the January 17, 2013 hearing, in response to counsel's question about "moderate to marked problems with concentration, persistence, and pace" Dr. Borden opined that, "I believe that the claimant does have impairment in that area, but she would have difficulty carrying out detailed and complex tasks. But the – according to the test results, it seems to me that she retains the capacity to perform simple repetitive work." Tr. 57. The ALJ reasonably relied on this testimony in making his paragraph B findings, and therefore I find no error.

The ALJ also considered the findings of Dr. Rawlins and the state agency psychological consultants when determining whether plaintiff met listing 12.02. Tr. 25, 246, 259, 275-76, 292, 833, 860, 988. The ALJ noted that:

> according to Dr. Rawlins' own notes, the claimant engages in significant activities at home. For example, on March 8, 2010, Dr. Rawlins endorsed a three bedroom apartment for the claimant: 'She has a brain injury condition which requires a quiet environment to be able to concentrate while performing many activities. She needs to have a three bedroom apartment so she can use the third bedroom as a quiet space for such activities'.

Tr. 25, 883. With respect to the state agency psychological consultants' reports from June 2010 and September 2010, the ALJ noted that they found plaintiff had no more than moderate limitations with respect to the paragraph B criteria. Tr. 25, 246, 259, 275-76, 292. Based on the above evidence, I find that the ALJ provided substantial evidence for his rationale that plaintiff's mental impairments do not meet or equal listing 12.02.

Next, plaintiff argues that even if the ALJ properly determined that she did not meet listing 12.02, the ALJ failed to address whether her impairments equal listing 12.02. Pl.'s Br. 17. Specifically, plaintiff argues the ALJ's findings are boilerplate and insufficient under *Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990). Pl.'s Br. 17. In *Marcia v. Sullivan*, the Ninth Circuit held that "in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia*, 900 F.2d at 176. However, in its later decision in *Lewis v. Apfel*, the Ninth Circuit held that the ALJ did not err in not discussing the combined effects of plaintiff's impairments, if the plaintiff failed to offer a "theory, plausible or otherwise," as to how his impairments "combined to equal a listed impairment," or "pointed to evidence that shows that his combined impairments equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). Here, plaintiff fails to address why her multiple impairments equal an impairment in listing 12.02. Under *Lewis*, I find that the ALJ did not err in determining that plaintiff did not meet or equal listing 12.02. The record fully supports this finding.

Finally, in determining whether plaintiff satisfied listing 12.02, the ALJ also considered the paragraph C criteria, and also found plaintiff had not satisfied listing 12.02 under this evaluation. Tr. 25-26. Based on the above evidence, I find no error.

B. Credibility Determination

Next, plaintiff argues that the ALJ failed to provide clear and convincing reasons for discrediting her testimony.  Pl.'s Br. 25-27.  Specifically, plaintiff argues that the ALJ made "inconsistent findings about [p]laintiff's ability to perform activities of daily living," noting that even if the ALJ found that plaintiff could perform activities of daily living well, "the activities of daily living cited by the ALJ are not inconsistent with [p]laintiff's testimony that she is unable to get along with people, remember instructions, or sustain focus for long enough to make it through a typical work day." Pl.'s Br. 26

When making a credibility determination, the ALJ must conduct a two-step analysis. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  First, the plaintiff "must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom." *Id.* (citing *Smolen,* 80 F.3d at 1281-82)(internal quotations omitted).  "If the claimant meets this threshold and there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (citing *Smolen,* 80 F.3d at 1281, 1283-84).  Examples of clear and convincing reasons include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or conduct, daily activities inconsistent with the alleged symptoms, a sparse work history, testimony that is vague or less than candid, and testimony from physicians and third parties about the nature, severity and effect of the alleged symptoms complained. *Tommasetti*, 533 F.3d at 1040; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in the record, [the reviewing court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that "claimant's statements concerning the intensity, persistence, and limiting effect of these symptoms were not entirely credible." Tr. 27. The ALJ cited numerous reasons for discrediting plaintiff's testimony.

First, the ALJ noted that the prior ALJ found that plaintiff "worked multiple jobs, cared for her young son, attended classes and received a certificate to become a phlebotomist, looked for work as a phlebotomist, and received unemployment benefits" after her alleged onset date. Tr. 27, 226. The ALJ further agreed with the prior ALJ's findings regarding inconsistencies between plaintiff and her boyfriend's testimony with respect to her activities and involvement with horses, and that the objective medical evidence and minimal medical treatment did not support the severity of plaintiff's claims. Tr. 27, 226-27, 229-30. The ALJ's decision to review the prior ALJ's findings is reasonable, because he did not reopen plaintiff's prior application for review. *See Oberg v. Astrue*, 472 Fed App'x 488, 490 (9th Cir. 2012) (holding ALJ's consideration of record of prior decision was of no import because it was done only to determine whether there was a substantial change in plaintiff's condition since that time); *Browning v. Barnhart*, 61 Fed App'x 503, 504 (9th Cir. 2003) (holding that Attorney Advisor's review of evidence from prior hearing was not in error when done for the purpose of showing "evidence was consistent with Plaintiff's longstanding complaints" and not a consideration of claimant's disability on the merits). The ALJ noted that "any reference to evidence associated with the prior application is for clarification or credibility purposes only." Tr. 20. Therefore, I find no error in the ALJ's reference to the prior ALJ's findings when making his credibility determination.

Second, the ALJ found that the objective medical evidence did not support the "degree of

impairment severity" described by the plaintiff. Tr. 27. The ALJ found that imaging studies of plaintiff's brain did not "substantiate the alleged degree of impairment severity," and Magnetic Resonance Imaging (MRI) studies of plaintiff's cervical spine and lumbar spine showed "mild findings," which "contradict the claimant's allegations of extreme pain." Tr. 27, 925-26, 1056-63. The ALJ also opined that both Dr. Benjamin Branch and Dr. Leonard Wilk performed physical examinations of plaintiff on February 1, 2011, and June 13, 2011, respectively, which were "relatively unremarkable." Tr. 27, 887-88, 956-57. Finally, the ALJ noted plaintiff's asthma appeared "to be under adequate control with medications." Tr. 27. "Although lack of medical evidence cannot form the sole basis for discrediting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. Here, the ALJ considered the lack of medical evidence as only one reason for discrediting plaintiff's testimony, and his findings are supported by the record.

Third, the ALJ found that plaintiff's treatment history was not proportionate to the alleged degree of impairment severity. Tr. 28. In particular, the ALJ noted that plaintiff "received relatively routine treatment for her various physical complaints, such as neck and back pain as well as headaches, and has received little treatment from a mental health specialist." Tr. 28. Specifically, the ALJ found that plaintiff "refuses to take any medications on a regular basis for pain" particularly because Vicodin "made her loopy," however, he "saw nothing in the progress notes from treating sources to suggest that they could not adequately deal with any complaints regarding medication side effects, such as adjusting the dosage, changing the time to take the medication or changing the medication." Tr. 28, 597. The ALJ also found that plaintiff did not need an assistive device to ambulate, or any device, such as a TENS unit, for pain. Tr. 28. Plaintiff's noncompliance with her medication despite her alleged pain and the routine

treatment received are clear and convincing reasons for discrediting plaintiff's testimony.  See *Tommasetti*, 533 F.3d at 1040.  These findings were supported by the record, and therefore reasonable.

With respect to plaintiff's mental health, the ALJ noted that "the objective medical evidence simply does not support a substantial head injury but instead supports a reaction to stressors," citing Dr. Villanueva's March 2008 findings. Tr. 28, 900-01.  The ALJ noted that Dr. Villaneuva's recommendation for "reinitiation of antidepressant therapies" and stress management counseling, along with plaintiff's January 17, 2013 comments of "rather extreme mental symptoms," was not consistent with a traumatic brain injury. Tr. 28, 70-71.  Overall, the ALJ determined that plaintiff's treatment history had "not emphasized such mental health treatment." Tr. 28, 901.  However, plaintiff argues that she has "not been able to get more extensive mental health treatment because she does not have medical insurance." Pl.'s Br. 26, citing Tr. 168, 763.  A claimant cannot be denied benefits for failing to obtain treatment that would ameliorate her condition if she cannot afford that treatment. *Gamble v. Chater,* 68 F.3d 319, 321 (9th Cir. 1995) (disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds).

Granted, the ALJ failed to acknowledge plaintiff's lack of insurance with respect to her failure to obtain mental health treatment, and I find this reason for discrediting the plaintiff's testimony is not supported by substantial evidence.  However, under *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008), the court need not uphold every reason the ALJ discredited the plaintiff, as long as substantial evidence exists to support the ALJ's decision.  Here, the ALJ provided numerous other reasons for finding plaintiff not entirely credible, reasons that are supported by the record.  An ALJ's error is harmless where it is

"inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the ALJ's error is harmless because allowing the ALJ to address his failure to address plaintiff's lack of health insurance would not affect the ALJ's overall credibility finding or the ultimate disability determination. Therefore, I find no error.

Fourth, the ALJ found plaintiff not entirely credible due to plaintiff's daily activities. Tr. 29. The ALJ specifically stated that "the longitudinal evidence does not support the alleged degree of limited activities, and I therefore do not find the claimant's allegations regarding her limitations to be entirely credible." Tr. 29. The ALJ noted that in plaintiff's March 3, 2010 Function Report she wrote that she lives with and cares for her ten-year-old son and cares for her dog and horse. Tr. 29, 463, 587-88, 594. The ALJ found that plaintiff reported that she performs her personal care, prepares meals regularly, performs some housework, travels by car herself, drives her son to and from various locations, shops, gets along with family, friends, and neighbors, and that she "is doing a fair amount of barn work on her parent's property and riding horses a lot." Tr. 29, 588-92, 594-95, 1001. The ALJ also noted the following: on April 19, 2011 she reported to Dr. Hagie that she had a headache from "moving stuff, two rooms of furniture, by herself"; on October 24, 2011 she reported she had fallen off a horse; on November 1, 2011 she reported jaw pain after playing soccer; on January 18, 2012 she reported "activities of daily living consisting of some housekeeping, horse care, and barn work, riding horses, walking with her son, and attending his soccer games"; and on February 28, 2012 she "told Dr. Hagie that she fell while playing with her grandchildren." Tr. 29, 1015, 1021, 1029-30, 1204. The ALJ further noted that "she was able to follow questioning at the hearing" and testified that "she spends time on her parents' property, including helping to take care of her horse," "rides

horses in good weather," and is "able to drive and does activities with her mother." Tr. 29.

Plaintiff argues that "the activities of daily living cited by the ALJ are not inconsistent with [p]laintiff's testimony that she is unable to get along with people, remember instructions, or sustain focus for long enough to make it through a typical work day." Pl.'s Br. 26. However, an ALJ may discredit the plaintiff where the degree of disability alleged by the plaintiff is arguably inconsistent with her admitted daily activities. The Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record; if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Here, although variable interpretations of the record could be made, I find that the ALJ's inferences are reasonably drawn from the record. Therefore, I find no error.

Finally, the ALJ determined that plaintiff's complaints changed or increased during times when secondary gain was involved, specifically agreeing with the opinions of state agency analysts. Tr. 27, 245, 258. In particular, the ALJ noted that plaintiff gave "dramatically inconsistent statements" regarding a motor vehicle accident which had "become the basis for her disability claims," especially relating to her "difficulty focusing, concentrating, and articulating her thoughts." Tr. 27. The ALJ also cited plaintiff's numerous requests for assistance obtaining benefits, including her requests to doctors to label her dog as a "companion pet" and a "service dog" to allow her to keep her dog in HUD housing; having Dr. Grant Rawlins recommend a three bedroom apartment for plaintiff because "[s]he has a brain injury condition which requires a quiet environment to be able to concentrate while performing many activities"; and receiving assistance from Dr. Leonard Wilk to discharge child support payments, discharge student loan debt, obtain caregivers, and have her boyfriend listed as a caretaker in order to prevent him from

being asked to leave her HUD housing.  Tr. 27-28, 835, 883, 890, 911, 917, 927, 950, 959, 960, 1150-51, 1180-81, 1201-02, 1208.

Plaintiff argues that "the ALJ did not actually cite any evidence showing [p]laintiff's reports of symptoms were increased during those doctor visits as compared to others." Pl.'s Rep. Br. 12.  I disagree.  As discussed above, the ALJ found that plaintiff "received relatively routine treatment for her various physical complaints," and the ALJ cited numerous medical records where plaintiff's chief reason for doctor's visits was to fill out forms.  Tr. 911, 917, 927, 950, 960, 1150-51, 1180-81, 1201-02.  Further, the ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson,* 359 F.3d at 1197.  Here, the ALJ cited numerous clear and convincing reasons for discrediting plaintiff's testimony, and therefore I find no error with the ALJ's overall credibility determination.

### C. Evaluation of Treating and Examining Source Medical Opinions

Next, plaintiff argues that the ALJ improperly rejected the opinions of psychiatrist Dr. Benjamin Branch, physician Dr. David Hagie, and physician Dr. Leonard Wilk.  Pl.'s Br. 18.

An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31).  An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

First, the ALJ disregarded Dr. Branch's February 1, 2011 statement, "It may be that the patient is unable to accommodate a job in any type of setting secondary to cognitive impairments," as speculation.  Tr. 30, 935.  Specifically, the ALJ found that "the objective

medical evidence and the claimant's reported activities contradict such speculation, and Dr. Branch speculated on an issue reserved to the Commissioner of the Social Security Administration." Tr. 30, SSR 95-5p. The ALJ is correct that opinions on whether or not a claimant is "disabled" or "unable to work" are reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(d)(1). However, physicians may provide opinions on the ultimate issue of disability, i.e., about whether a claimant is capable of any work, given the claimant's limitations. *Holohan*, 246 F.3d at 1202.

Here, I find that the ALJ reasonably discredited Dr. Branch's statement regarding plaintiff's ability to accommodate a job by citing the objective medical evidence and plaintiff's reported activities as discussed above. Tr. 30. Further, the ALJ discredited only Dr. Branch's single statement as "speculation," and not his entire opinion, given the ALJ's citation to Dr. Branch's findings throughout his decision. Tr. 23, 24. The ALJ presented clear and convincing reasons for discrediting Dr. Branch's single statement concerning the plaintiff's ability to work, and did not improperly reject Dr. Branch's opinion.

Second, the ALJ gave less weight to Dr. David Hagie's January 22, 2012 and January 23, 2012 opinions that the claimant was "unable to work on even a part-time basis, and that she is unable to perform full-time work on a regular and continuing basis." Tr. 30, 1045-55. The ALJ opined that the doctor relied, "in large part, on the claimant's report of her capabilities and subjective complaints." Tr. 30. The ALJ further noted that the objective medical evidence did not support the doctor's findings, and Dr. Hagie had a "financial interest in the claimant obtaining disability." Tr. 30. In finding this, the ALJ noted Dr. Hagie's November 4, 2009

report which read, "Return is prn and I hope that will be when she gets her social security disability, perhaps that will allow her to have some continued care from me." Tr. 30-31, 876 (emphasis in ALJ decision). Finally, the ALJ noted that Dr. Hagie reported on May 29, 2009 that the "claimant was currently able to return to work or school and perform a range of work at the medium level of exertion." Tr. 31, 613, 824. Although the ALJ noted that this opinion was made before the relevant period, he determined that the objective medical evidence "did not support such a dramatic decline in functioning." Tr. 31.

I find no error in the ALJ's evaluation of Dr. Hagie's opinion. A "physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). Here, the ALJ found that Dr. Hagie's reports were based quite heavily on plaintiff's subjective report of her symptoms and limitations, which the ALJ properly found not entirely credible. Moreover, the record supports the ALJ's rational interpretation that Dr. Hagie was acting as an advocate. Tr. 876. Therefore, I find the ALJ provided specific and legitimate reasons for rejecting Dr. Hagie's opinions.

Finally, with respect to Dr. Leonard Wilk, the ALJ gave less weight to Dr. Wilk's opinion that the plaintiff is "unemployable" and "unable to work on a regular and continuing basis." Tr. 31, 349, 881, 894, 1065-73, 1178. The ALJ noted that the doctor relied on conditions that were not medically determinable, specifically, posttraumatic stress disorder, traumatic brain injury, and a post-concussion syndrome, and relied on plaintiff's subjective complaints, which he found not credible. Tr. 23-24, 31. The ALJ specifically noted plaintiff's December 21, 2011

neurological examination were "grossly normal" and that plaintiff's cognitive impairment was "mild." Tr. 31, 1075, 1198. Finally, the ALJ found that the doctor has gone to "such extreme measures to accommodate the [plaintiff] that his objectivity is questionable."  Tr. 31. Specifically, the ALJ found that plaintiff sought Dr. Wilk's assistance in obtaining numerous benefits, such as letters to discharge child support, "paperwork to get caregivers at her new home," the dissolution of student loan debt, obtaining a prescription that her dog was a "service dog," and writing letters that "her boyfriend was a necessary caretaker," with Dr. Wilk noting that "this is not a medical issue at all but a social/legal issue." Tr. 31, 890, 917, 927, 950, 959, 1180-81, 1201-02.

I find no error in the ALJ's evaluation of Dr. Wilk's opinion.  The ALJ properly found that Dr. Wilk's reports were based on plaintiff's subjective reports, which the ALJ found not credible.  He further noted that the doctor's objectivity was questionable given the continued assistance given to plaintiff.  Under either the clear and convincing, or the specific and legitimate reason standards, the ALJ provided sufficient evidence in the record to support his findings for disregarding each of the doctor's opinions.  Therefore, I find no error.

D. Plaintiff's Limitations Regarding Concentration, Persistence, and Pace

Next, plaintiff argues that the ALJ's RFC assessment failed to address her moderate to marked difficulties in concentration, persistence, and pace.  Plaintiff specifically argues that the ALJ's RFC finding that plaintiff can perform simple and repetitive tasks "does not properly capture the moderate to marked limitations in performing activities of daily living or the moderate to marked limitations in maintaining concentration, persistence or pace." Pl.'s Br. 22.

The RFC is defined under the Social Security regulations as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental

requirements of jobs." 20 C.F.R. 404, Subpt. P, App. 2 § 404.1512(a).  In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. §404.1512(a), *Reddick,* 157 F.3d at 724.  The RFC has three components: physical abilities, mental abilities, and other impairments, including pain and fatigue. 20 C.F.R. §§ 404.1545(a), 416.945(a).  Mental abilities include understanding, carrying out and remembering instructions, and responding appropriately to supervision, coworkers and work pressures.  *Id.* §§ 404.1545(c), 416.945(c).  An ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with restrictions identified in the medical testimony, such as the ability to carry out simple tasks, or simple, routine, repetitive tasks. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

Here, when determining plaintiff's RFC with respect to plaintiff's ability to perform mental requirements of work, the ALJ gave the most weight to the impartial medical expert in psychology, Dr. Betty Boden, who determined that "the plaintiff remains able to perform work consisting of simple, repetitive tasks…with no public contact and occasional contact with co-workers and supervisors." Tr. 30, 50-61, 1085.  The ALJ found that Dr. Borden's testimony was consistent with the objective medical evidence and the "June 2010 and September 2010 opinions of the State Agency psychological consultants." Tr. 30, 249-50, 262-63, 279-80, 295-97.  The ALJ gave less weight to Dr. Branch, Dr. Hagie, and Dr. Wilk's testimony, which is discussed above. Tr. 30.

Plaintiff argues, under *Brink v. Comm'r*, 343 Fed. App'x. 211 (9th Cir. 2009) that hypothetical questions to the VE referencing only "'simple, repetitive work,' without including limitations on concentration, persistence or pace" do not adequately encompass plaintiff's

difficulties with concentration, persistence, or pace. Pl.'s Br. 23. In *Brink*, the court held that the ALJ erred by propounding a hypothetical question to the VE referencing only "simple, repetitive work," without including limitations on concentration, persistence or pace. *Brink,* 343 Fed. App'x at 212. However, under *Brink*, the ALJ's hypothetical was inadequate because the medical testimony established that the plaintiff had limitations in concentration, persistence, and pace which were not accounted for in the hypothetical. *Id.* Here, the ALJ reasonably incorporated the relevant limitations in concentration, persistence, and pace based on the medical testimony of Dr. Borden and the opinions state agency psychological consultants, all of whom specifically found that plaintiff could perform "simple, repetitive" work. Tr. 30, 57, 249-50, 262-63, 279-80, 295-97. Thus, I find this case similar to *Stubbs-Danielson*, where the Ninth Circuit held "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174.

Accordingly, the ALJ's RFC assessment reasonably incorporated the plaintiff's moderate to marked difficulties in concentration, persistence, and pace, and I find is no error.

E. Evaluation of Lay Witness Testimony

Next, plaintiff argues that the ALJ failed to properly discredit the testimony of plaintiff's lay witnesses. Pl.'s Br. 27-29. Specifically, plaintiff argues that the ALJ erred by not explaining how the limitations observed and described by the lay witnesses "are not reflective of the most [p]laintiff still is able to do." Pl.'s Br. 28.

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. *Tobeler v. Colvin*, 749 F.3d 830, 832-34 (9th Cir. 2014); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.

1996); *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993).  If the ALJ disregards such testimony, the ALJ "must give reasons that are germane to each witness." *Id.*  See also *Greger v. Barnhart,* 464 F.3d 968, 972 (9th Cir. 2006).  However, an ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012).

Here, the ALJ noted that he considered statements from Laura Hachez-Zamora, Vicki L. Smith, Karen Adams, Penny Trout, Ron S. Schroeder, and Linda Marsh.  Tr. 29, 86-94, 333, 346-48, 540, 599-606, 635-40, 670, 1093.  He found that "to some extent, all of the third parties refer to the claimant's subjective complaints, but the claimant is not entirely credible."  Tr. 29. The ALJ further found that the third-party reports were "not necessarily reflective of the claimant's maximal residual functional capacity," because the lay witness statements were "contradicted by the objective medical evidence, the claimant's treatment history, and the claimant's reported activities, such as successfully completing training to be a phlebotomy technician."  Tr. 29-30.  With respect to the testimony of Vicki L. Smith, the ALJ disregarded it because she was not present for plaintiff's reported activities of riding horses and moving furniture.  Tr. 30.  Finally, the ALJ disregarded the September 24, 2009 report of Penny Trout, and third party reports submitted in 2008 and 2009, because they were submitted as part of plaintiff's prior application and considered not relevant to this hearing.  Tr. 30, 531-39.

I find no error in the ALJ's evaluation of the lay witness testimony.  An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. *Lewis v Apfel,* 236 F.3d at 511.  Here, the ALJ noted that the lay witness testimony was based on plaintiff's subjective

complaints, which the ALJ found not credible.  See *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).  Another "reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis,* 236 F.3d at 511 (citing *Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir.1984)).  Here, the ALJ noted that the lay witness testimony that did not repeat the plaintiff's subjective complaints was contradicted by the objective medical testimony. Tr. 30.  The ALJ provided germane reasons to discredit the lay witnesses, and therefore I find no error in the ALJ's analysis.

### F. Step Five Analysis – Plaintiff's Ability to Perform Work in the National Economy

Finally, the plaintiff argues that the ALJ failed to determine that she could perform other jobs in the national economy in his step five analysis. Pl.'s Br. 29.  Specifically, plaintiff argues that the hypothetical questions posed to the VE failed to include all "limitations and restrictions" discussed by herself and her eleven lay witnesses, meaning the VE's testimony had "no evidentiary value" on which the ALJ could rely.  Pl.'s Br. 29.

At step five, the burden of proof shifts to the Commissioner to demonstrate that the claimant can engage in some type of substantial gainful activity that exists in "significant numbers" in the national economy. *Yuckert,* 482 U.S. at 141-42. The step five analysis requires assessment of the medical evidence, the claimant's daily activities, prior work record, functional restrictions and limitations, medication and other treatment for relief of symptoms, and evidence from physicians and third parties. 20 C.F.R. §§ 404.1529, 416.929. Typically, the ALJ propounds a hypothetical question to the VE that is based on medical assumptions supported by the record and reflects all of the claimant's limitations. *Osenbrock v. Apfel,* 240 F.3d 1157, 1163 (9th Cir. 2001). If the claimant fails to present evidence that she suffers from certain limitations, the ALJ need not include those alleged impairments in the hypothetical question to the VE. *Id.*

Here, the ALJ asked the VE at the January 17, 2013 hearing "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." Tr. 33.  Although an ALJ must pose a hypothetical question that reflects all of the claimant's limitations, "an ALJ need not incorporate evidence from opinions that were permissibly discounted or limitations based on subjective reports deemed not credible." *Batson*, 359 F.3d at 1197; *Bayliss*, 427 F.3d at 1216.  Here, as discussed above, the ALJ did not err by discounting plaintiff's testimony, certain medical testimony, the testimony of plaintiff's lay witnesses, or by incorporating plaintiff's limitations in the RFC analysis.  Therefore, I find that the ALJ made a proper step five determination that plaintiff could perform other work in the national economy.

## CONCLUSION

The ALJ's finding that plaintiff was not disabled under the Act is supported by substantial evidence in the record.  Accordingly, the Commissioner's decision is AFFIRMED. IT IS SO ORDERED.

Dated this _12_ day of April, 2016.

Ann Aiken
United States District Judge